GALLOWAY COAL COMPANY *v.* JOHN F. HUNTER.

CONTRACTS. *Construction. Guaranty. Suretyship. Evidence. Surrounding circumstances.*

Courts may look to the situation of the parties and the surrounding circumstances for aid in determining whether an ambiguous and doubtful contract be one of suretyship or guaranty.

FROM the circuit court of, first district, Hinds county.

HON. ROBERT POWELL, Judge.

The Galloway Coal Company, appellant, was plaintiff in the court below; Hunter, appellee, was defendant there. The opinion of the court states the case.

*Brame & Brame,* for appellant.

The contract was signed by both Hunter and Green as agent. The goods were furnished thereunder. This made Hunter a joint contractor or surety, and not a guarantor. As to the difference between a surety and a guarantor, see 14 Am. & Eng. Ency. Law (2d ed.), 1130.

Where both parties sign, the obligation imposed is that of surety, and no notice of acceptance is required. "A surety is

one who is bound with his principle by the same instrument and on the same considerations.   He is an original promisor and debtor from the beginning.   On the other hand, the contract of the guarantor is his own separate undertaking in which the principal does not join."   *Cox* v. *Weed,* 57 Miss., 350.

"A contract must be interpreted in the light of the circumstances and conditions under which it was entered into."  *Tufts* v. *Greenewald,* 66 Miss., 360; *Pratt* v. *Cotton Company,* 51 Miss., 470.

"In construing contracts of doubtful meaning, testimony is competent to show the relation of the parties to each other, and the subject and the surrounding circumstances, as aids to the interpretation of the language employed, so as to ascertain the intent."   *Gillenwaters* v. *Miller,* 49 Miss., 150.

"Where a contract of doubtful meaning may be construed as valid or invalid, that construction will be adopted which makes it legal and effective, and the burden is upon him who sets up the illegality to prove it."   *Wilkins* v. *Riley,* 47 Miss., 306; *Clay* v. *Allen,* 63 Miss., 426.

"If the language of the guaranty is ambiguous or not so clear as to indicate its meaning conclusively, resort may be had to parol evidence of the situation and surroundings of the parties when the guaranty was given, to show what the intention of the parties was.  If, after the admission of extrinsic evidence, the guaranty still remains ambiguous, it should be construed most strongly against the guarantor, especially where the party secured has advanced his money on the faith of the interpretation most favorable to his rights."   14 Am. & Eng. Ency. Law (2d ed.), 1144, and authorities cited.

But, the contract we are considering is not a guaranty, but a joint contract, in which Hunter became surety, and as such he was not entitled to any notice.   The defense of a failure to give notice in this case is technical in the extreme.   It is manifest from all the facts that no notice was contemplated.

The following propositions are maintained by the evidence:

1. That it was contemplated by all the parties that the business should be continued in the name of George S. Green, agent.

2. That it was so continued, and the coal was delivered by the company under this contract and on the faith of it.

3. That, inasmuch as both parties signed the contract, the obligation imposed upon Hunter was that of a surety and not a guarantor, and therefore he was not entitled to notice of acceptance.

*Green & Green,* for appellee.

The coal was sold to Margaret E. Green through George S. Green, agent, and by this finding of fact this court is bound, as the evidence demonstrates it to be true. Hunter's only connection with the transaction was by the paper which he signed, and he knew nothing of what was being done until nine months afterwards. This letter was a mere offer and created no liability *in praesenti* until accepted. Clarke Contracts, 29. There is no pretense that appellant accepted this offer. There must always be a meeting of minds before a contract can result, and no case holds the contrary. *Cox v. Machine Co.,* 57 Miss., 353, is not such an authority—the bond was delivered, *i. e.,* accepted, and notice in addition was claimed and disallowed. Hunter signed a letter of guaranty and must have notice of its acceptance. *Bank v. Drake,* 51 L. R. A. (Iowa, 1900), 760; *Williams v. Staton,* 5 Smed. & M. (1845), 353; *Montgomery v. Kellogg,* 43 Miss. (1871), 492; *Ellis v. Jones,* 70 Miss. (1892), 62; *Machine Co. v. Richards,* 115 U. S. (1885), 527 (citing cases); 10 Notes, U. S. Rep., 151 and 1165; 1 Id., 475; 3 Id., 207; *Field v. Haish,* 85 Ill. App. (1899), 166; note to *Banks v. Gay,* 4 L. R. A., 166; 1 Brandt on Sur. and Guar. (2d ed.), ch. 8; *DeCremer v. Anderson,* 113 Mich. (1897), 578; *Mills v. Travis,* 56 Minn. (1894), 483.

2. Hunter was a mere guarantor and not a surety, and we must be governed entirely by the instrument, and not contem-

poraneous statements. *Wren* v. *Hoffman,* 41 Miss., 619. In *Montgomery* v. *Kellogg,* 43 Miss., 492, the instrument is exactly similar and was held a guaranty, and a similar ruling was made in *Ellis* v. *Jones,* 70 Miss., 62. This guaranty must be strictly construed. *Lipscomb* v. *Postell,* 38 Miss. (1860), 476; 1 Brandt on Surety and Guar., sec. 93.

George S. Green, and George S. Green, agent, are not synonymous.

1. The doctrine of *descriptio personae* is inapplicable because the word "agent" between these parties had a fixed meaning. It meant that the coal was sold to M. E. Green, and with coal so sold we have nothing to do.

2. One of the names affixed to the letter was George S. Green, *agent.* This word cannot be rejected, and if in the light of surrounding circumstances it has acquired a meaning, it must be given to it here. *Atkinson* v. *Sinnott,* 67 Miss. (1889), 510.

3. Unless George S. Green, agent, means Margaret E. Green, it adds nothing and is nugatory. The testimony of their witness, Holmes, shows that this was the way they then understood it.

4. The meaning of the instrument must be determined by the instrument, but surrounding circumstances may be looked to; then all doubt vanishes. It was a letter of guaranty when Hunter signed it, and it cannot be changed without his consent.

5. The word "agent," signed to the letter, would put appellant on notice, and whatever he would have found out is to be charged to him. *Davis* v. *Henderson,* 25 Miss., 549; *Mott* v. *Hicks,* 1 How., 513; *Hardy* v. *Pilcher,* 57 Miss., 18; 1 Parson's Notes; 168; 1 Dan. Neg. Ins., 418; *McClellan* v. *Reynolds,* 49 Mo., 312; *Haile* v. *Pierce,* 32 Md., 327; *Baldwin* v. *Bank,* 1 Wall., 234; *Babcock* v. *Beaman,* 11 N. Y., 200; *Mechanics* v. *Bank,* 5 Wh., 326. Hence there was no liability.

There was no waiver by Hunter by his letter, as there was not an intentional relinquishment of a known right. *Railway*

v. *Jones,* 73 Miss., 110. There was no consideration for nor acceptance of this offer—conceding it to be such.

Green was damaged by the breach of the contract and there is sufficient to set off the one against the other, and this was done by the circuit judge, and as there is evidence to support it, this court will not reverse. Green's business was wrecked by appellant, and let them bear the burden.

The questions here were purely those of fact, and have been determined in the circuit court in our favor, and having abundant evidence to support them, this is conclusive.

There are two separate aspects in which George S. Green, agent, is liable, *i. e.,* (1) in *indebitatus assumpsit* for the goods shipped to him; (2) as joint guarantor with Hunter if this primary liability is not satisfied. Appellant concede that if this instrument was signed by a stranger (Hunter), it would be but a guaranty. The mere fact that Green became liable in this double aspect does not alter the relative rights or confuse them in the slightest; hence this was a guaranty, and came squarely within the rule so often announced in this state.

Argued orally by *L. Brame,* for appellant, and by *Garner W. Green,* for appellee.

BOOTHE, Special J., delivered the opinion of the court.*

George S. Green, being involved in debt, insolvent, and unable safely to transact business in his own name, entered into the coal and wood business in the city of Jackson, Miss., as agent for his wife, Margaret E. Green. Having no credit, George S. Green, in the year 1897, secured from appellee, John F. Hunter, a written guaranty to appellant, the Galloway Coal Company, that he would pay any amount for coal furnished Green for that year, not to exceed $400, at the end of the coal season. This instrument was signed alone by John F. Hunter,

---

*Judge Calhoon having been of counsel in the case before his appointment to the bench, took no part in the decision of the case; he recused himself and J. B. Boothe, Esq., was appointed by the governor, as special judge, to preside in his place.

and accepted by the Galloway Coal Company; and George S. Green embarked in the business as agent for Margaret E. Green. In July, 1898, appellant desired something more than a guaranty before it would undertake to furnish coal to George S. Green for that year; and its agent informed Green that his name, as well as that of the appellee, should be signed to any written undertaking that might be made for a continuance of their business relations. George S. Green thereupon copied the letter upon which his credit for the year before was based, except that "we" was substituted for "I," and "1899" for "1898;" and this letter was written upon a sheet of paper having the following words and figures printed at the top of the same: "Office of George S. Green, Agent, Wholesale and Retail Coal and Wood Merchant, No. 428 S. State Street, Jackson, Miss." The letter is as follows:

"Jackson, Miss., July 14th, 1898. Galloway Coal Company, Memphis, Tenn.—Gentlemen: Mr. George S. Green, of this city, desires to engage in the coal business, and to buy his coal from your company. If you will sell to him, we will, for value received, be responsible for and pay any amount he fails to pay, not to exceed $400.00. That is to say, he will buy from time to time, and pay along as he can; and we will pay you any balance that he may owe you between this date and April 1st, 1899, not to exceed $400.00. Yours truly, J. F. Hunter. George S. Green, Agent." Green, however, did not sign at the same time and place that Hunter did. Appellant replied as follows: "Memphis, Tenn., July 15th, 1898. Mr. George S. Green, Agent, Jackson, Miss.—Dear Sir: We have your letter of the 14th, containing security which is satisfactory. Yours truly, B. A. Wells, Secty. & Treas." J. F. Hunter, by letter of April 15, 1899, was notified by appellant that there was a balance due by George S. Green, agent, of $196.84, and requesting payment. This letter was acknowledged by J. F. Hunter, who said: "Of course, I understand that, if he don't pay the bill,

that you can hold me for it, and I will pay it if he does not," and said he would see Green about it.

It is proper for the court to look to the circumstances attending the contracting parties, as well as the terms of the contract itself, to learn the purposes and objects contemplated, as aids to a correct understanding of a particular part supposed to be equivocal or doubtful. *Pratt* v. *Cotton Co.,* 51 Miss., 470; *Tufts* v. *Greenewald,* 66 Miss., 360 (6 So. Rep., 156); 14 Am. & Eng. Ency. Law (2d ed.), 1144; *Stanley* v. *Miles,* 36 Miss., 452. George S. Green for a time lived near appellee. They were friends, and had known each other for many years. The coal business conducted in the name of Geo. S. Green, as agent for Margaret E. Green, was public and open from the beginning. In front of the place of business was the sign, painted, "Margaret E. Green. George S. Green, Agent," and in the office there was a placard of the same sign. In the light of all the circumstances in the case, we are forced to the opinion that the undertaking by J. F. Hunter was a suretyship, and not a mere guaranty, and that, according to all the evidence, appellant is entitled to recover the amount sued for.

*Reversed and remanded.*